TO BE FILED UNDER SEAL – TO BE FILED UNDER SEAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(ALEXANDRIA DIVISION)

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| AND COMMONWEALTH OF VIRGINIA | ) |
| Ex rel., | ) |
| | ) |
| Van Nguyen | ) TO BE FILED UNDER SEAL |
| | ) PURSUANT TO 31 U.S.C. § 3730 |
| Plaintiffs, | ) |
| | ) Case # 1:19cv68 - TSE/TCB |
| v. | ) |
| | ) |
| Victoria Trans-Cultural Center, Inc., | ) |
| And | ) |
| Leticia Basauri | ) |
| (In her individual capacity) | ) |
| And | ) |
| Ignacio Basauri | ) |
| (In his individual capacity) | ) |
| Defendants. | ) |

## COMPLAINT

1. Relator Van Nguyen brings this action on her own behalf, as well as on behalf of the United States pursuant to the *qui tam* provisions of the federal False Claims Act (31 U.S.C. § 3729 et seq.); and the Virginia Fraud Against Taxpayers Act (Va. Code § 8.01-216.1 et seq.).

2. Defendants, who provide mental health services, billed government payors for services not rendered and for medically unnecessary services. Bills were submitted by at least one counselor (Laura George) for up to fourteen hours per day of patient visits when many of those visits were not performed.

## PARTIES

3. Relator Van Nguyen is a social worker working toward her clinical licensure. She earned her Bachelor of Science in Clinical Social work from George Mason University in 2014 and her Masters in Social Work from the University of Southern California in 2016. She was employed by defendants as a Clinical Supervisor from August of 2017 until her termination on April 17, 2018, a period of roughly eight months.

4. Relator has first-hand knowledge of the information on which this *qui tam* action is based; relator is the original source of the information alleged in this Complaint and has met all procedural requirements of 31 U.S.C. § 3730(b)(2) prior to filing this Complaint.

5. Victoria Transcultural Clinical Center (VTCC) is a Virginia corporation with its primary place of business in Fairfax County, Virginia.

6. At all times relevant to this Complaint, VTCC maintained its headquarters in Fairfax, Virginia, within this district and within this division. VTCC's programs are open to underserved children, youth, and families located in the Northern Virginia area who are qualified for Medicaid or County-funded mental health services. The Company's programs currently include Applied Behavior Analysis, EPSDT, and Intensive In-Home Services (IIH).

7. At all times relevant to this Complaint, VTCC had a Provider Participation Agreement with the Virginia Department of Medical Assistance Services ("DMAS") and, as such,

was responsible for ensuring that its community mental health programs meet the standards and requirements set forth by that Department.

8. Leticia Basauri is the owner and director of VTCC; in March of 2001 she was a founded the company. She purports to have earned two post-graduate degrees in Clinical Psychology in Mexico, and to have completed Doctoral coursework in Clinical Psychology in Canada. She also received her Masters in Clinical Social Work (MSW) from George Mason University. Ms. Basauri is the wife of co-defendant Ignacio Basauri and is a resident of the Commonwealth of Virginia.

9. Ignacio Basauri is the husband of Leticia Basauri; he is also an employee of VTCC, and currently serves as the CEO of VTCC. Mr. Basauri has first-hand knowledge of the fraud and false claims alleged herein because, among other reasons, relator reported it to him directly in December of 2017.

10. At all times relevant to this Complaint, both Mr. and Mrs. Basauri had power and authority to submit claims to government payors for mental health counseling services. In addition, both defendants had power and authority to prevent the submission of false claims to government payors.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, 28 U.S.C. §1367, and 31 U.S.C. §3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§3729 and 3730.

12. This Court has personal jurisdiction over the defendants pursuant to 31 U.S.C. §3732(a). The defendants' primary place of business is within this district and defendants transact

or have transacted business in Fairfax County, Virginia, within the Eastern District of Virginia.

13. Venue is proper in the Eastern District of Virginia pursuant to 31 U.S.C. §3732(a) because the defendants can be found in and transact or have transacted business in this district. At all times relevant to this Complaint, defendants regularly conducted substantial business within this district, and maintained employees and offices in Fairfax, Virginia, within this district. In addition, most or all the statutory violations, as alleged herein, occurred in this district.

## ALLEGATIONS COMMON TO ALL COUNTS

14. Medicaid is a jointly financed federal-state program established under Title XIX of the Social Security Act, 42 U.S.C.A. §§ 1396-1396v. Medicaid pays for necessary medical care, including certain mental health services, for individuals who do not have income or other resources to pay for the care.

15. In any event, Medicaid pays only for those medical services that are actually performed; moreover such services must be reasonable and necessary under the circumstances to treat the patient.

16. Medicaid is the single largest payer for mental health services in the United States. The law spells out certain mandatory benefits that states must offer and optional benefits that states may choose to offer. Each state describes the services that will be offered in its Medicaid plan, which must be approved by the Centers for Medicare & Medicaid Services (CMS).

17. The Virginia Medicaid program is administered by the Department of Medical Assistance Services ("DMAS"). Services must meet the requirements set forth in the Virginia State Plan for Medical Assistance Services and elsewhere in Virginia law.

18. Various publications and resources are available to providers, including the Community Mental Health Rehabilitation Services (CMHRS). This provider publication is the reference manual provided by DMAS that distills the Medicaid statute into user-friendly sections relevant to mental health providers.

19. Among other provisions, 12VA30-60-61 provides for intensive in-home services for children under the age of 21. Such services are paid on a fee-for service basis. Pursuant to 12VA30-60-61(13), the billing unit for IIH shall be one hour.

20. Medicaid pays for a maximum of 26 weeks of intensive-in home health services each year; authorization is required for services to extend beyond the initial 26 weeks. (12VAC30-50-130). To qualify intensive in-home services initially (as well as to qualify for the additional 26 weeks) an assessment is needed.

21. When relator began her employment with defendants, she discovered voluminous false bills for services not rendered as well as false records and statements material to those false claims.

**COUNT ONE**
**FALSE CLAIMS IN VIOLATION OF 31 U.S.C. § 3729(a)(1)(A) AND (B)**
**BILLING FOR FOR SERVICES NOT RENDERED AND MAKING OR USING**
**FALSE RECORDS OR STATEMENTS MATERIAL TO FALSE CLAIMS**
**(AGAINST ALL DEFENDANTS)**

22. All prior allegations are reincorporated.

23. Prior to relator's employment, an individual named Laura George (George) performed the role of Clinical Supervisor.

24. As Clinical Supervisor, George's primary responsibility was not to see patients, but rather to oversee the services provided by others. In her official capacity as Clinical Supervisor, Ms. George was generally expected to be in the office between the hours of 9 am and 3 pm each day.

25. Relator discovered that, in addition to her six hours of office work each day, Ms. George often recorded twelve or more hours of patient visits per day, not including travel time in between appointments.

26. On March 2, 2017, for example, Ms. George reported 15 hours of intensive in-home counseling services with 10 different patients.

27. That day, Ms. George recorded a one-hour session with patient J.A. from 7 am to 8 am; she then recorded a two-hour session with patient I.T. from 8 am to 10 am. However, from 9:30 am to 10:30 am she also recorded a visit with patient V.G.; she also recorded a visit with a patient named L.G. from 10:10 am to 11:10 am.

28. Although Ms. George did not record a patient visit from 11:10 am to 12:10 am, the rest of her calendar that day shows her in appointments every hour on the hour, with no travel time in between appointments.

29. Using only the initials of the patients, the rest of her day is as follows: "K.L." from 12:10-1:10 p.m.; "P.H." from 1:10-4:10 p.m.; "H.C.E." from 4:10-5:10 p.m.; "A.S." from 5:10-6:10 p.m.; "B.A." from 6:10-7:10 p.m.; and "G.E." from 7:10-9:10 p.m.

30. Pursuant to 12VA30-60-61(13), intensive in-home counseling services are billed in one-hour increments; also, pursuant to 12VAC30-80-96, travel time is not paid by Medicaid.

31. Each of the 15 hours of patient visits recorded on March 2, 2017 were billed to government payors, despite the fact that those services were not rendered.

32. In addition, Ms. George created false records and statements when she submitted her time sheet containing 15 hours of patient visits on March 2, 2017. These records and/or statement were false because she did not perform the 15 hours of patient visits as she claimed in her records, and indeed she could not have because these were in-home visits and Ms. George did not account for any travel time in between appointments.

33. These bills were submitted to DMAS and were paid by DMAS and/or by a fiscal intermediary.

34. Defendants knew, at all times relevant, that these false bills were being submitted; moreover even if they did not know prior to relator's employment, they certainly learned about it then because she told them clearly that false bills had been submitted to the government and had been paid.

35. As a result, the United States and Commonwealth of Virginia have been damaged in an amount to be proved at trial.

### COUNT TWO
### FALSE CLAIMS IN VIOLATION OF 31 U.S.C. § 3729(a)(1)(A) AND (B)
### BILLING FOR MEDICALLY UNNECESSARY SERVICES
### (AGAINST ALL DEFENDANTS)

36. All prior allegations are reincorporated.

37. Medicaid pays for a maximum of 26 weeks of intensive-in home health services each year; authorization is required to extend services beyond the initial 26 weeks. (12VAC30-50-130).

38. To qualify intensive in-home services initially (as well as to qualify for the additional 26 weeks) an assessment is needed.

39. During relator's employment counselors were told to make sure that the clients were authorized for treatment initially as well as for the additional 26-week period.

40. Counselors were told to falsify symptoms if necessary; in addition, owner Leticia Basauri often falsified symptoms when she conducted assessments.

41. Among the most frequent falsified symptoms was "suicidal ideations." Naturally, suicidal ideations are among the most serious conditions.

42. For example, patient J.E. had an initial assessment from Ms. Basauri; Ms. Basauri noted that J.E. had experienced suicidal ideations, which qualified him for 26 weeks of intensive in-home care.

43. Subsequent follow-up appointments with J.E. and other family members demonstrated that, in fact, J.E. had never had suicidal ideations.

44. Relator found a total of 30 instances of falsified suicidal ideations among the patients of VTCC.

45. Other mental health professionals employed by defendants, including Salman Azam, confirmed to relator that they had been directed by defendants to falsify symptoms, if necessary, in order to have the patients qualify for intensive in-home services.

46. Ms. Basauri and others falsely reported that clients had reported suicidal ideations when in fact no such ideations had been present; these false reports were then used to justify multiple 26-week counseling periods.

47. As a result, defendants submitted false claims to the United States and the Commonwealth of Virginia; these claims were false because, in many instances, symptoms of suicidal ideations had been falsified.

48. As a result, the United States and Commonwealth of Virginia have been damaged in an amount to be proved at trial.

**COUNT THREE**

## WRONGFUL TERMINATION OF EMPLOYMENT IN VIOLATION OF 31 U.S.C. § 3730(h)
### (AGAINST DEFENDANT VTCC)

49. All prior allegations are reincorporated by reference.

50. Almost from the start of her employment, relator uncovered evidence of fraud and false claims.

51. Relator took numerous steps to rectify the fraud and false claims she uncovered, including reporting the fraud to CEO Ignacio Basauri in December of 2017.

52. Specifically, relator reported to Mr. Basauri the false claims submitted by Laura George and described above.

53. Mr. Basauri did not seem surprised by this information and declined to take any action.

54. However, shortly thereafter relator's hours of work were reduced from 40 hours per week down to 20, and shortly after that her employment was terminated altogether.

55. Relator's employment was terminated in retaliation for her reporting fraud to her superiors at VTCC, including Mr. Basauri, and her steps to prevent further false claims to the United States and/or Commonwealth of Virginia.

56. As a result of her termination, relator has been damages in an amount to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, Relator prays for judgment against the defendants, jointly and severally, as follows, with regard to Counts One and Two:

That this Court enter judgment against defendants in an amount equal to three times the amount of damages the United States and Commonwealth sustained because of defendants' actions, plus the maximum civil penalty for each violation of the federal False Claims Act

and/or Virginia Fraud Against Taxpayers Act alleged above; Relator further demands the maximum amount allowed pursuant to §3730(d) of the False Claims Act, and the equivalent provision of the VFATA, plus an award of her attorney's fees, costs, and litigation expenses;

With Regard to Count Three, relator demands judgment in an amount equal to twice her back pay, front-pay for her loss of earning capacity, plus all other relief necessary to make her whole, in addition to her attorney's fees, costs, and litigation expenses;

Relator further demands any supplemental or alternative relief available, as the Court deems just and proper.

Relator hereby demands a trial by jury.

For Relator, by Counsel:

Zachary A. Kitts
Virginia Bar # 47052
Counsel for Relator
K&G Law Group, PLLC
3554 Chain Bridge Road, Suite 100
Fairfax, Virginia 22030
Phone: 703-649-5500
Fax:  703-649-6363
Email: zkitts@kglawpllc.com

Matthew T. Sutter
Virginia Bar # 66741
Counsel for Relator
Sutter & Terpak, PLLC
7540A Little River Turnpike
Annandale, Virginia 22003
Phone: 703-256-1800
Email: matt@sutterandterpak.com

DATED: 1/16/19